IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 18 2004

**IN THE MATTER OF: E.H.**
**STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES**
**v.**
**KENNETH HARAZAK**

**An Appeal from the Juvenile Court for Henry County**
**No. 7285      Hansel J. McAdams, Judge**

---

**No. W2004-00514-COA-R3-PT - Filed January 26, 2005**

---

This involves the termination of parental rights. The child at issue was taken into protective custody after police raided the parents' home and found an active methamphetamine lab. Drug charges were filed against the child's mother and father. The father was on parole from a prior murder conviction in Illinois, and his drug-related activities were a violation of his parole. As a result, the father was returned to Illinois to serve further time in prison on the prior murder conviction. The mother's parental rights were terminated by default judgment. The father's parental rights were terminated based on having the child in the home with a meth lab, and the father's resulting incarceration in Illinois. The father appealed, arguing that the Tennessee Department of Children's Services did not make reasonable efforts to reunite him with his child. We affirm, finding that under the circumstances of this case, the Department of Children's Services was not required to make reasonable efforts to reunite the father with the child.

**Rule 3 Appeal; Judgment of the Juvenile Court is affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Gary J. Swayne, Paris, Tennessee, for Respondent/Appellant Kenneth Harazak

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Diamond, Assistant Attorney General, Nashville, Tennessee, for the Petitioner/Appellee, State of Tennessee, Department of Children's Services

**OPINION**

On or before August 8, 2002, police conducted a raid at the home of Sandra Harazak ("Mother") and Respondent/Appellant Kenneth Hazarak ("Father"). They found an active

methamphetamine ("meth") lab. Present in the home at the time of the raid was Mother and Father's daughter, E.H., the subject of this appeal. E.H., born March 20, 1998, was four years old at the time. She was referred to Petitioner/Appellee the Department of Children's Services ("DCS"), and was subsequently taken into protective custody. DCS learned that, in the raid of Mother's and Father's home, police found the ingredients for making meth throughout the house, easily accessible to their young daughter. A tank of anhydrous ammonia, a component of meth, was hidden in the weeds not far from E.H.'s swing set.

Both parents have a substantial history of drug involvement and Father has an extensive criminal history. At the time of the police raid, Father was on parole from a murder conviction in Illinois.

A permanency plan was developed, in which Father was required to attend drug counseling, submit to random drug screenings, resolve any pending legal proceedings against him, attend parenting class, and attend Alcoholics Anonymous meetings. The stated goal of the permanency plan was to return E.H. to her parents.

On December 16, 2002, Father pled guilty to manufacturing meth with the intent to sell. Since the drug conviction was a violation of his parole on the Illinois murder conviction, Father was then turned over to the Illinois Department of Corrections for further imprisonment in Illinois. Prior to this, Father had only a few visits with E.H., and completed no requirements of the permanency plan.

On July 9, 2003, DCS petitioned for termination of the parental rights of both Mother and Father. The Juvenile Court of Henry County conducted a hearing on the matter on December 12, 2003. Mother was notified of the hearing by telephone and by publication in the local newspaper but did not attend. A default judgment was taken against her. At the time of the hearing, Father was still incarcerated in Illinois.

At the hearing, the Juvenile Court heard testimony from DCS Child Protective Services worker Pam Moss ("Moss") and DCS case manager Elaine Hart ("Hart"). Both Moss and Hart interviewed E.H. about conditions in the parents' home before the police raid. E.H. told Moss that she understood that the police had come to her home because her mother and her parents' friends were smoking "bad stuff." She described the bad stuff as something her father hid in the woods. E.H. said Father took the bad stuff, and Mother told her it was his medicine.

Hart described her conversations with E.H. as well. E.H. described helping stir the meth as it was cooking. She said the bad stuff made her sick a lot. A number of "aunts" and "uncles" would visit her home; they would dip needles in the bad stuff and give themselves shots. E.H. knew about the buried tank of anhydrous ammonia. She reported seeing her parents engaged in intercourse, and could demonstrate sexual movements.

Hart testified that Father was notified of all staff meetings and court hearings, and though incarcerated, could have input through letters.[1] She said that, because of his incarceration, Father had not demonstrated any progress on the permanency plan.

Father testified at the hearing by telephone from prison in Illinois. He acknowledged that he had been arrested for manufacturing meth and, while out on bond, received a second charge for possession of meth. Father conceded that E.H. had witnessed him injecting meth into his arm. Father admitted that he kept a tank of anhydrous ammonia, a component of meth, in the weeds approximately 75 feet from E.H.'s swing set. Father denied that he and Mother allowed E.H. to witness sexual intercourse between them but acknowledged that E.H. had walked in on them once.

Father testified that he completed an anger management program in prison and that he attended Alcoholics Anonymous and Narcotics Anonymous meetings in prison, both of which were objectives under the permanency plan. Father also testified that he was certain he could meet the goals and objectives set out in the permanency plan after being released from prison.

After the hearing, the Juvenile Court entered an order dated May 17, 2004. In the order, the Juvenile Court found: (1) Father had committed severe child abuse against E.H.; (2) Father manufactured meth in the home where the child lived; (3) Father was substantially noncompliant with the permanency plan; (4) Father had failed to remedy the persistent conditions that caused E.H. to be taken from his custody and prevented her safe return to him at an early date; (5) DCS had made a reasonable effort to help Father make necessary adjustments; and (6) that it had been established by clear and convincing evidence that the termination of Father's parental rights was in the best interest of E.H. Based on these findings, the Juvenile Court terminated Father's parental rights. Father now appeals this order. Mother does not appeal the default judgment against her.

On appeal, Father asserts that DCS did not exert reasonable efforts to reunite him with E.H., even though Mother received these services. Father maintains that he should be given an opportunity to achieve the goals set out in the parenting plan after he is released from incarceration.

Our review of this case is governed by T.R.A.P. 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the factual findings, unless the evidence preponderates otherwise. T.R.A.P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

It is well settled in Tennessee that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon,* 776 S.W.2d 96, 97 (Tenn. Ct. App.1988) (citing *Stanley v. Illinois,* 405 U.S. 645 (1972)). However, this right is not absolute and may be terminated based on clear and convincing evidence of one or more of the grounds set out in Tennessee Code Annotated § 36-1-113 (g). If one of the grounds for termination is so established, and it is also

---

[1]Hart testified that she understood that Father took the blame for the drug charges so that Mother could get custody of E.H.

-3-

established by clear and convincing evident that termination is in the child's best interest, then the parental rights may be terminated. Tenn. Code Ann. § 36-1-113(c)(1) and (2) (2001).

Father argues on appeal that DCS did not make reasonable efforts to reunify him with E.H. Tennessee Code Annotated § 37-1-166(g)(1) defines "reasonable efforts" as "the exercise of reasonable care and diligence by the department to provide services related to meeting the needs of the child and the family." Tenn. Code Ann. § 37-1-166(g)(1) (2001). In response, DCS asserts, *inter alia*, that it was not required to make reasonable efforts to reunite Father with E.H. under the circumstances in this case. Tennessee Code Annotated § 37-1-166(g)(4) states that:

> Reasonable efforts of the type described in § 37-1-166(g) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that . . . [t]he parent has subjected the child that is the subject of the petition or any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home to aggravated circumstances as defined in § 36-1-102.

Tenn. Code Ann. § 37-1-166 (g)(4) (2001). The term "aggravated circumstances" is defined in Tennessee Code Annotated § 36-1-102 to include "severe child abuse as defined in § 37-1-102." Tenn. Code Ann. § 36-1-113(g)(4) (2001). Further, Tennessee Code Annotated § 37-1-102(21)(D) defines "severe child abuse" as "[k]nowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified . . . is occurring." T.C.A. § 37-1-102(21)(D) (Supp. 2004).[2] It is undisputed that Father pled guilty to manufacturing meth in the home where he and Mother lived with E.H. The manufacture of meth in E.H.'s home clearly falls within definition of severe child abuse found in Tennessee Code Annotated § 37-1-102 (21)(D). As such, by statute, DCS was not required to make reasonable efforts to reunite E.H. with Father.

> Under Tennessee Code Annotated § 36-1-113(g)(4), parental rights may be terminated when:
>
> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition. . .

T.C.A. § 36-1-113(g)(4) (2001). One ground for termination relied on by the Juvenile Court was the fact that Father had committed severe child abuse against E.H. As noted above, the definition of severe child abuse specifically includes allowing the child to be present where meth is being manufactured. Therefore, grounds for termination of Father's parental rights were established by clear and convincing evidence.

---

[2]Section 37-1-102(21)(D) was added by the 2002 amendment effective July 17, 2002.

The record also supports the Juvenile Court's finding, by clear and convincing evidence, that termination of Father's parental rights was in E.H.'s best interest. Therefore, we conclude that the Juvenile Court did not err in terminating Father's parental rights. Any other issues raised on appeal are pretermitted.

The decision of the trial court is affirmed. Costs of the appeal are taxed to Father, Kenneth Harazak, or his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE